RITA MARÍA SANTIAGO ET AL., Plaintiffs and Appellees, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

Nos. 12803, 12804.   Decided February 15, 1963.

*J. B. Fernández Badillo, Solicitor General,* and *Carlos G. Láti-mer, Assistant Solicitor General,* for appellant. *Víctor Gu-tiérrez Franqui* and *Federico Ramírez Ros* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dá-vila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On October 11, 1950, the Treasurer of Puerto Rico sent to each one of the taxpayers, Rafael Ramos Cobián and Rita

M. Santiago,[1] a preliminary notice of income-tax deficiency for 1947. This deficiency was determined by increasing the net income reported from $9,496.88 to $252,284.38. This income was derived from undeclared income (dividends) of $223,518.11 and four other items which will be set out in detail in the course of this opinion.

The taxpayers requested reconsideration and an administrative hearing, but before making the final determination the Treasurer sent them on November 20, 1951, another preliminary deficiency notice increasing the net taxable income to $598,726.04. That income was determined on the basis of the net income included in the notice of October 11, 1950, and adding an item of $349,641.66 as participation in the profits as a result of stock exchange.

The taxpayers again requested reconsideration and were granted an administrative hearing, after which the Secretary of the Treasury sent notice to the taxpayers on July 20, 1953, of his final deficiency determination asserting the taxable income at the sum of $389,119.61. This income was apportioned between both taxpayers and the tax was computed separately to each of them.

To review this final determination of the Secretary of the Treasury the taxpayers filed separate complaints on August 18, 1953, in the Superior Court. After an incident on the sufficiency of the bonds posted by plaintiffs, the cases were set for hearing several times until finally, at the hearing set for November 15, 1955, plaintiffs raised two preliminary questions of law, the first of which culminated in the orders object of this appeal. In that contention plaintiffs challenged the jurisdiction of the Superior Court on the ground that the notice of July 20, 1953, was a preliminary notice of deficiency and not the final determination of the Secretary of the Treasury.

---

[1] These taxpayers were married to each other until August 1947, when by judgment of divorce on the ground of separation for more than three years the marriage relations existing between them were dissolved.

Evidence was introduced on the preliminary questions raised by plaintiffs, and subsequently the trial court issued an order in each case refusing jurisdiction after determining that the notice of July 20, 1953, was a preliminary notice of deficiency.

The Secretary of the Treasury appealed alleging in his brief that the trial court committed the following errors:

"First Error: The Superior Court erred in concluding that the Secretary of the Treasury included in the notice of deficiency of July 20, 1953, items which had not been included theretofore.

"Second Error: The Superior Court erred in holding that the Secretary of the Treasury did not send a final notice to taxpayer in the present case.

"Third Error: The Superior Court erred in refusing jurisdiction in the present case."

Plaintiffs-appellees have moved for dismissal of these appeals (1) because appeal may be taken only at the instance of the parties aggrieved by the order or judgment object of the appeal, and in these cases the Secretary of the Treasury is not the party aggrieved by the orders of the Superior Court refusing jurisdiction to take cognizance of the complaints filed against him, and (2) because the orders in question do not constitute adjudications on the merits of the tax deficiencies in dispute, nor final judgments or interlocutory orders appealable under the existing act at the time of prosecuting these appeals.

Appellees contend that the appeals under consideration are covered by the provisions of the Code of Civil Procedure, now repealed, because they were taken before the approval of the new Rules of Civil Procedure, and that according to § 294 of that Code [2] an appeal may be taken only by the party

---

[2] Section 294 *supra* provided:

"Any party aggrieved may appeal in the cases prescribed in this Code. The party appealing is known as the appellant, and the adverse party as the respondent."

For the construction of this section, see *Freyre* v. *Quintero*, 23 P.R.R. 119; *Diego Agüeros & Co.* v. *Navarrete*, 36 P.R.R. 789; *Díaz* v. *Barceló*, 27 P.R.R. 290; *Pérez* v. *Torres*, 79 P.R.R. 575.

aggrieved by the order or judgment object of such appeal, the Secretary of the Treasury not being the party aggrieved since the complaints brought against him were dismissed for lack of jurisdiction. They further contend that § 57(a) of the Income Tax Act of 1924, which is the applicable law, provided that the final judgments of the Superior Court "entered on the merits of the deficiency may be appealed in the manner and within the period provided by law to appeal to the Supreme Court from the final judgment of the Superior Court, subject, however, to the additional requirements imposed by section 816 of this title", that the orders object of appeal do not constitute final judgments on the merits of the deficiencies because what the Superior Court did was merely to refuse jurisdiction to take cognizance of the alleged deficiencies.

Appellees further contend that the Income Tax Act of 1924 contains specific provisions providing the action to be taken whenever the Superior Court refuses jurisdiction to take cognizance of appeals taken by the taxpayer from deficiency determinations, and to that effect they cite § 57(a) which provides that the decisions of the Superior Court refusing to entertain any case for failure of the taxpayer to comply with the legal requirements as a requisite to hear the case shall be unappealable, "but any party affected may petition the Supreme Court for a review of the decision by means of certiorari, within 10 days from the date on which he is notified of such decision."

Referring to this provision, the appellees allege: "This provision is not applicable to the cases at bar, since here the refusal of the Superior Court to entertain the complaints brought by appellees is not based on the ground that taxpayer has failed to comply with any requirement, but on the fact that the deficiency notices are not final and are not therefore reviewable by the courts. However, if by analogy § 57 (a) is considered applicable, in that case the orders

of the trial court are unappealable by express provision of that section, since review thereof was not sought within the proceeding nor within the period provided by that section."

By November 16, 1956, date of the orders appealed from, the legal period within which the Secretary of the Treasury could assess and levy the taxes involved in this litigation had already prescribed.

▇▇▇ The effect of those orders was to void the final character of the deficiency notices which the Secretary of the Treasury and even the appellees attached to the notices of July 20, 1953. We can hardly agree with the criterion that these orders did not affect appellant adversely for the technical reason that the complaints were dismissed and, therefore, that defendant was not an aggrieved party. However, if those orders were not appealable for the reasons adduced by appellees, or if they were not reviewable under § 57 (a) because the trial court's decision of lack of jurisdiction was not based on taxpayers' failure to comply with the legal requirements for seeking review thereof, we can and should consider the appeals as petitions for certiorari, thus granting to appellant a remedy to argue before this Court the trial court's determination on the nature or character of the deficiency notices of July 20, 1953. Cf. Viera v. Racing Comm'n, 81 P.R.R. 688; Concepción v. Board of Accountancy, 80 P.R.R. 190.

For a better understanding of the problem involved in this case, it is well to make a brief résumé of the transactions which gave rise to the deficiency notices in litigation.

▇▇ Rafael Ramos Cobián and Rita María Santiago were married until August 14, 1947. The legal community partnership constituted by them owned 99 per cent of the corporate stock of Cobián Theatres, Inc., which was engaged in business (moving pictures, theatres, movie houses) in Puerto Rico and the Dominican Republic. For the purpose of reorganizing the business of this corporation, according to a resolution of

its board of directors, two corporations were organized: "Cobián Theatres of Puerto Rico, Inc." and "National Pictures Corporation." On January 14, 1947, Cobián Theatres, Inc. decided to transfer all its assets and liabilities, in exchange for stock, to the two new corporations mentioned above. On that date Cobián Theatres, Inc. transferred to National Pictures Corporation part of its assets, which are described as "films, Santo Domingo Office and Equipment," in exchange for stock of National Pictures Corporation which was also owned by the stockholders of Cobián Theatres, Inc. The remainder of the assets and liabilities of the business in Puerto Rico of Cobián Theatres, Inc. was transferred, in exchange for stock, to Cobián Theatres of Puerto Rico, Inc. The stock of this corporation was also owned by the stockholders of Cobián Theatres, Inc., and those object of the exchange were distributed among the stockholders of Cobián Theatres of Puerto Rico, Inc. in the corresponding proportion. In July 1947 a part of the assets and liabilities of Cobián Theatres of Puerto Rico, Inc. was transferred, in exchange for stock, to a newly created corporation organized by the same organizers of Cobián Theatres of Puerto Rico, known as Puerto Rico Amusement Corporation. In August 1947 judgment of divorce was rendered dissolving the marriage relations between Ramos Cobián and Rita María Santiago. On November 12, 1947, the aforesaid transactions among Cobián Theatres, Inc., National Pictures Corporation, Cobián Theatres of Puerto Rico, Inc., and Puerto Rico Amusement Corporation were put in public deeds and ratified. By public deed of December 1, 1947, the community partnership between Ramos Cobián and Rita María Santiago was liquidated, adjudicating to the latter, as partial payment of her community share, the entire stock of Puerto Rico Amusement Corporation.

Let us examine next the deficiency notices. The net income copied below was adjusted in the notice of October 11, 1950:

325

"Adjustment of Net Income

| | | |
|---|---:|---:|
| Net income as per return | | $ 9, 496. 88 |
| Net income as per investigation | | 252, 284. 38 |
| Adjustment of net income as computed below | | $242, 787. 50 |

Income to be increased and deductions to be reduced:

| | | |
|---|---:|---:|
| 1. Undeclared income (dividends) | $223, 518. 11 | |
| 2. Undeclared income (others) | 3, 060. 07 | |
| 3. Profit from sale of property | 10, 000. 00 | |
| 4. Loss Circuito Cobián—Ponce | 8, 709. 32 | |
| 5. Loss in sale of stock | 2, 500. 00 | |
| Total | | $247, 787. 50 |

Income to be reduced and deductions to be increased:

| | | |
|---|---:|---:|
| 6. Profit from sale of house | $5, 000. 00 | |
| Total | | 5, 000. 00 |
| Adjustment of net income (same as above) | | $242, 787. 50" |

The notice itself contains an explanation of the items altered. Item No. 1—Undeclared income (dividends)—$223,518.11, represents the participation in the dividend distributed by Cobián Theatres of Puerto Rico, Inc. as a result of the reorganization made on November 12, 1947. Item No. 2, which comprises other undeclared income of $3,060, corresponds to undeclared rent on a house acquired in September 1947, and electric light and power, water, sewage, and repairs of residence assumed by Cobián Theatres of Puerto Rico, Inc. which constitute a compensation to taxpayer.

Item No. 3 is the determination of a profit of $20,000 instead of $10,000, reported in the return, from the sale of two pieces of property in August 1947.

Item No. 4, entitled "Loss Circuito Cobián—Ponce—$8,709.32," corresponds to the value of unused repair parts which do not constitute an expense of that year.

Item No. 5, representing a $2,500 loss in the sale of stock, is not a deductible loss. A deduction of $5,000 is made from the income in item No. 6 as profit in the sale of the house because the house was not the property of taxpayer.

The net income was determined in the preliminary deficiency notice of November 1951 as follows:

326

Tax Year: 1947

| | | | |
|---|---|---|---|
| NET INCOME AS PER NOTICE OF 10/11/50 . . . . . . . . . . | . . . . . . . . . . . . | . . . . . . . . . . . | $252,284.38 |
| ADJUSTMENTS AS PER INVESTIGATION<br>PLUS: Undeclared Income . . . . . . . . . . . . . . . . . . .<br>(Profit from exchange) | | | 319,641.66 |
| Participation in profits as a result of exchange of stock of Cobián Theaters, Inc. for stock of Cobián Theaters of Puerto Rico. Inc. and stock of National Pictures, Inc. as a result of the reorganization made November 12, 1947. | | | |
| Market value in 1947 of the stock of:<br>Cobián Theaters of Puerto Rico, Inc. . . . . . . . . | $459,434.86 | | |
| National Pictures, Inc. . . . . . . . . . . . . . . . . . . . . . | 36,592.80 | $496,027.66 | |
| Basis of stock in Cobián Theaters, Inc. . . . . . . . | . . . . . . . . . . . . | 146,386.00 | |
| Net Profit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . . . | $349,641.66 | |

# And in the final notice of July 20, 1953 the net income was determined as follows:

Tax Year: 1947

| | | | |
|---|---|---|---|
| NET INCOME AS PER NOTICE OF 11/20/51 . . . . . . . . . | . . . . . . . . . . . . | . . . . . . . . . . . | $601,926.04 |
| ADJUSTMENTS AS PER ADMINISTRATIVE HEARING:<br>Increase in net income as per notice . . . . . . . . . . . . . | . . . . . . . . . . . . | $592,429.16 | |
| Net income as per hearing:<br>Net profit from reorganization (1) . . . . . . . . . . . . .<br>Undeclared income . . . . . . . . . . . . . . . . . . . . . . . . . .<br>Profit from sale of property . . . . . . . . . . . . . . . . . . .<br>Loss Circuito Cobián — Ponce . . . . . . . . . . . . . . . .<br>Loss in sale of stock . . . . . . . . . . . . . . . . . . . . . . . | $360,353.34<br>3,060.07<br>10,000.00<br>8,709.32<br>2,500.00 | | |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . . | $384,622.73 | | |
| LESS: | | | |
| Profit from sale of house . . . . . . . . . . . . . . . . . . . . | 5,000.00 | 379,622.73 | |
| NET INCOME TO BE DEDUCTED AS PER HEARING . . . | . . . . . . . . . . . . | . . . . . . . . . . . | 212,806.43 |
| (1) Manner in which net profit upon<br>reorganization of 11/12/47 was determined:<br>Uncommitted accrued surplus as o 11/12/47 . . .<br>Increase in value of property . . . . . . . . . . . . . . . . . .<br>Contingent reserve . . . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . . .<br>. . . . . . . . . . . .<br>. . . . . . . . . . . . | $231,107.78<br>87,720.74<br>41,524.82 | |
| | | $360,353.34 | |
| NET INCOME AS PER ADMINISTRATIVE HEARING . . . | . . . . . . . . . . . . | . . . . . . . . . . . | $389,119.61 |
| ¹/₂ CORRESPONDING TO RITA SANTIAGO . . . . . . . . . . . . | . . . . . . . . . . . . | . . . . . . . . . . . | $194,559.80 |
| ¹/₂ CORRESPONDING TO YOU . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . . . | . . . . . . . . . . . | $194,559.81 |

It will be noted that in order to adjust the net income reported by the taxpayer, the Secretary of the Treasury included in his preliminary notice of October 11, 1950, five items which increased the net income reported by $247,787.50. An item of $5,000 unduly reported by taxpayer was deducted therefrom, the deficiency being reduced to $242,787.50.

After making a further investigation the Secretary of the Treasury sent to the taxpayers the preliminary notice of deficiency of November 20, 1951. The basis taken for this notice was the net income computed to taxpayers in the notice of October 11, 1950, namely, the deficiency determined on the basis of the six items explained in that notice which resulted in the increase of $242,787.50 in the net income, plus that which had been reported, making a total of $252,284.38. In this second notice there was also added an item of $349,641.66, representing the participation in the profits as a result of the exchange of stock of Cobián Theatres of Puerto Rico, Inc. and stock of National Pictures, Inc. as a result of the reorganization made on November 12, 1947. This showed a deficiency of $592,429.16 after deducting the net income reported.

It may be said that this notice of 1951 substitutes that of October 11, 1950. However, it is a correct fact that each and every one of the items included by the Secretary of the Treasury in the notice of October 11, 1950, in order to readjust the taxpayers' net income, were included in the subsequent notice of November 20, 1951, since the first item shown in this last notice—"Net income as per notice of 10/11/50—$252,284.30"—is a complete ratification of the previous notice.

It is evident that when the taxpayers requested reconsideration and an administrative hearing of the preliminary notice of deficiency of November 20, 1951, they knew that the Secretary of the Treasury had considered in the readjust-

ment of the net income reported all the items shown in the notice of October 11, 1950, plus the item of $349,641.66 added in the said notice of November 20, 1951. The two most important items included in this notice were the items of undeclared income (dividends) amounting to $223,518.11, representing the participation in the dividend distributed by Cobián Theatres of Puerto Rico, Inc. as a result of the reorganization plan made on November 12, 1947, and the other item of undeclared income (profit from exchange), amounting to $349,641.60, representing the participation in the profits as a result of the exchange of stock of Cobián Theatres, Inc. for stock of Cobián Theatres of Puerto Rico, Inc. and stock of National Pictures, Inc. These two items increased the net income by $573,159.77. This sum of undeclared income included (1) the participation in the dividends distributed by Cobián Theatres of Puerto Rico, Inc. as a result of the reorganization made on November 12, 1947, and (2) the participation in the profits as a result of the exchange of stock of Cobián Theatres, Inc. and stock of National Pictures, Inc., also as a result of the reorganization made on November 12, 1947.

After the administrative hearing was held the Secretary of the Treasury sent to the taxpayers on July 20, 1953, his final deficiency determination. In that notice he confirmed the four items captioned "Other undeclared income—$3,060.07"; Profit from sale of property—$10,000; Loss Circuito Cobián—Ponce—$8,709.32; Loss in sale of stock—$2,500; and the deduction Profits from sale of house—$5,000, which had been included in the preliminary notice of October 11, 1950, and in the subsequent notice of November 20, 1951. As to the two items covering the participation in the Dividends distributed by Cobián Theatres of Puerto Rico, Inc. by virtue of the reorganization and participation in the profits as a result of the exchange of stock of Cobián Theatres, Inc. for stock of Cobián Theatres of Puerto Rico, Inc. and

stock of National Pictures, Inc. by virtue of the reorganization of the first of these corporations, aggregating $592,429.16, the Secretary of the Treasury readjusted the same by deducting the amount of $212,806.43, and confirmed the difference of $379,622.73 determined by adding to the uncommitted accrued surplus as of November 12, 1947, the increase in the value of the property and the contingent reserve, which represented the taxpayers' net profit in the reorganization made on above-mentioned date. And we have already seen that the two principal items of undeclared income, designated "dividends" in the preliminary notice of 1950 and "profit from exchange" in that of 1951, were based on the reorganization of the corporation Cobián Theatres, Inc. Fundamentally, the notice or final determination of deficiency is not based on concepts nor facts other than those shown in the oft-mentioned preliminary notices.[3] This makes

---

[3] In a memorandum of November 10, 1952, sent to the Bureau of Income Tax, the taxpayers stated as follows: "In the administrative hearing in which the above-mentioned deficiency was discussed (Re: Ramos Cobián), the Bureau explained the manner in which the amount of the profit of $349,641.66 was determined. Such determination is based on the following items:

"*Cost or basis of the stock exchanged*

| | |
|---|---|
| Cost of stock of Cobián Theatres, Inc. | $145,600.00 |
| Capital paid Cobián Theatres of Puerto Rico, Inc. | 1,000.00 |
| Capital paid National Pictures, Inc. | 1,000.00 |
| Total basis | $147,600.00 |

"*Market value of stock of Cobián Theatres of Puerto Rico, Inc.*

| | |
|---|---|
| Net equity | $332,107.78 |
| Surplus | 41,524.82 |
| Increase in value of property | 87,720.74 |
| Total Cobián Theatres of Puerto Rico, Inc. | $461,353.34 |
| Stock of National Pictures, Inc. | 37,000.00 |
| Total | $498,353.34 |
| Less cost (or basis) | 147,600.00 |
| *Net profits* | $350,753.34" |

It may therefore be seen that the concepts and items discussed and confirmed in part by the final notice of July 20, 1953, are the same shown

distinguishable the cases of *González Padín Co.* v. *Tax Court*, 66 P.R.R. 23, and *Irizarry* v. *Tax Court*, 67 P.R.R. 896.

■ In the final notice of deficiency sent to taxpayer Rita María Santiago, the Secretary of the Treasury included for the first time a penalty of 25 per cent. It is alleged that this makes such notice a preliminary or tentative notice, since it did not give her an opportunity to argue the propriety or correctness of the penalty before the Secretary of the Treasury. We do not agree.

■ Section 70 (*b*) of the Income Tax Act, before it was amended by Act No. 167 of May 3, 1949 (Sess. Laws, p. 528), provided:

"(*b*) The Treasurer shall determine and assess all taxes as to which returns or lists are so made under the provisions of this section. In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Treasurer in pursuance of law, the Treasurer shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to wilful neglect, no such addition shall be made to the tax. In case a false or fraudulent return or list is wilfully made, the Treasurer, shall add to the tax 50 per centum of its amount." (73 P.R.R. 502).

In *Community of the Heirs of Fajardo* v. *Tax Court*, 73 P.R.R. 499, we said at p. 503 that this provision excuses late filing, for reasonable cause, but not complete failure to file the return, and added, "We are therefore constrained to hold that the 25 per cent penalty automatically attaches upon a mere showing as here of a failure by the taxpayer to file a return at any time."

After the Secretary of the Treasury adjusted the taxpayer's net taxable income and computed the corresponding tax thereon, he was bound by law, by reason of her failure

---

in the preliminary notice of deficiencies. The taxpayers' theory was that the reorganization was nontaxable, and they challenged at all times the basis or cost of the stock of the corporations Cobián Theatres, Inc. and those of the taxpayers.

to file a return, to add to such tax the 25 per cent and to collect the same in the same manner as the tax. Whether the taxpayer was not bound to pay the tax thus assessed or to file a return, is a question which we are not called upon to decide at this time.

■ Lastly, we will say that the Secretary of the **Treasury,** in our opinion, did not alter his theory as to whether only one taxpayer or two taxpayers were involved. The tax was assessed separately to each taxpayer in the preliminary notices as well as in the final deficiency notice.

In view of all of the foregoing, we conclude that the Superior Court erred in refusing jurisdiction. Consequently, the orders object of these appeals will be set aside and the cases remanded to that court for further proceedings.